LOCAL DAIRYMEN'S COOPERATIVE ASS'N, INC. *vs.* WALTER H. STONE.

JANUARY 12, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action in assumpsit on the common counts for milk sold and delivered. The defendant pleaded the general issue and also filed a special plea setting forth that the promise relied upon by the plaintiff was the promise to pay the debt of another, which was not evidenced by a memorandum or note thereof in writing, as required by general laws 1923, chapter 333, sec. 6. The plaintiff's replication denied this special plea.

The case was tried before a justice of the superior court, sitting with a jury, and resulted in a verdict for the defendant. The jury also made two special findings: one, that the defendant went "security for milk purchased for E. C. Smith for a period of two weeks;" and two, that "the defendant did not purchase the milk outright." The plaintiff moved for a new trial, claiming that the verdict was the result of sympathy and against the evidence. This motion was granted by the trial justice. The case is before us on the defendant's single exception to this decision.

The plaintiff is a nonprofit-sharing cooperative association of some twelve to thirteen hundred milk producers. The defendant is a milk dealer who conducts his business from a barn in the rear of his house, 32 Jewell street, in the city of Providence. The plaintiff's claim, in the sum of $1692.23, covers the period from July 7 to October 25, 1933. During this time, Ernest C. Smith, a nephew of the defendant who died before the trial, and one Robert Budlong, both independent milk dealers, had their milk pasteurized and bottled by the defendant at his barn on Jewell street. All three, the defendant, Smith and Budlong, ran their individual milk routes from this place.

The testimony shows that, early in 1933, Smith was so heavily indebted to the plaintiff for milk sold and delivered to him that the plaintiff refused him further credit. On May 25, 1933, the defendant paid the plaintiff $700 in compromise of its claim against Smith, and, as Smith intended

to continue in business, the plaintiff and the defendant entered into the agreement which gives rise to the instant case.

The testimony in behalf of the plaintiff is to the effect that, having distinctly told the defendant that it would not sell Smith any more milk, the plaintiff and the defendant agreed that henceforth the milk should be sold and delivered to the defendant, even though both parties understood that the milk so sold and delivered was to be used by Smith. The defendant denies making any such agreement, claiming that he merely went "security" for the milk sold by the plaintiff to Smith, and then only "for two weeks but no more", at the end of which time, if the bill was not paid by Smith, the plaintiff was to notify him, the defendant, and stop further deliveries.

The testimony further shows that all the milk for Smith's use, under whatever agreement the parties actually made, was delivered at the defendant's barn on Jewell street. An original delivery slip, made out to the defendant in each instance and signed by the person that received the milk, was left at that place with each delivery. A duplicate delivery slip, so signed, was returned to the plaintiff. Each slip shows the name of the producer of the milk and the number of jugs of milk that were delivered but no weights. As the jugs quite often were not full, it was the practice of the plaintiff to have the milk weighed by the dealers themselves, they to note that weight on "weight slips" furnished by the plaintiff, which, after being signed by the weigher, were returned to the plaintiff. The weights appearing on the weight slips in this case are not in dispute.

The delivery slips were signed most frequently by Smith and nearly all the weight slips bear the name Smith or E. C. Smith, as weigher. The defendant argues that this strongly tends to prove that the plaintiff sold the milk to Smith and not to him. The plaintiff, on the other hand, refutes this contention by claiming that, according to all the delivery slips, the milk was sold and delivered to the defendant, irrespective of who signed those slips when the milk was re-

ceived at his place of business; and that the weight slips are material only in so far as they affect the quantity of milk that the plaintiff claims to have delivered.

The defendant denies knowing that the delivery slips were all in his name during this entire period covered by the plaintiff's claim. His explanation is that the delivery slips were stuck on a nail in the barn by whoever received the milk and that he did not "bother" to look at them because he was not buying the milk. He also testified that his nephew, Smith, never told him that the delivery slips were made out in his, the defendant's, name, and that "S. W." or Stanley Wardwell, whose initials, by our count, appear on at least fifty-two such slips, did not tell him, the defendant, because "he didn't know enough." There are eight delivery slips in evidence with the defendant's signature. He explains these slips by saying that he did not notice that they were made out to him personally.

It appears from the testimony that the plaintiff billed the defendant every fifteen days for the milk and that statements, bearing his name and address, were sent to him on July 7 and 22, August 10 and 22, September 7 and 22, and October 9, 1933. The defendant denies receiving these statements and says that the first time he saw them was when they were shown to him by his attorney, who had received them from Smith before his death. The testimony also shows that the bill called for in the statement of July 7, 1933, was paid by two checks, dated September 22 and October 13, 1933, signed by Smith, which were given by Smith to the plaintiff's bookkeeper with specific instructions, according to her testimony, to apply the amounts of those checks to his uncle's account. The plaintiff's field agent, who also acted as its collector, testified that he called upon the defendant every two weeks for payment of the bills for this milk; that he was paid once by him, and that on every other occasion the defendant put him off by saying that "Budlong and Smith owed him so much he just couldn't collect, he couldn't pay."

The testimony further shows that the defendant questioned the genuineness of the plaintiff's office record as well as the accuracy of its bookkeeper, claiming in this latter instance that while she headed the statements with his name and address, she actually must have sent them to his nephew's home at 35 Homestead avenue. The plaintiff, on the other hand, wanting to examine the defendant's books, whatever they were, requested him to produce them before the trial ended, which the defendant agreed to do. Later he excused their nonproduction by claiming that the books really belonged to Budlong and not to him, as he kept no books.

The testimony in the instant case is so conflicting that the weight of the evidence depends to a great extent upon the credibility of the witnesses. The trial justice had a distinct advantage over us in passing upon this issue, as he had the opportunity of observing the witnesses while testifying. In a discussion of the testimony before granting the plaintiff's motion for a new trial, the trial justice found that the verdict was against the evidence and the weight thereof, that it did not present "a fair picture of what happened," and that it did not do justice between the parties. The trial justice has given us the benefit of his considered judgment on the value of the evidence in the case and the credibility of the witnesses. There is nothing in the record before us showing that the trial justice was clearly wrong in ruling as he did. *Simmons* v. *Simmons,* 56 R. I. 222; *Surmeian* v. *Simons,* 42 R. I. 334. In this view of the case, we need not consider the special findings of the jury, especially since the language of the trial justice in granting the plaintiff's motion for a new trial satisfies us that in his sound judgment the verdict was against the weight of the evidence.

The defendant's exception is overruled and the case is remitted to the superior court for a new trial.

*Hinckley, Allen, Tillinghast & Wheeler, Harold A. Andrews,* for plaintiff.

*Earle B. Arnold,* for defendant.